On the Merits.
OVERTON, J.
In this suit, idaintiffs sue •defendant for rent for the months of November and December, 1919, at the rate of $165 a month, and for legal interest thereon from January 1, 1920, and to eject her from the leased premises. Defendant resists this demand by pleading a verbal lease, which she avers runs from November 1, 1919, to November 1, 1921, at a rental of $135 a month, and which amount she avers, she is ready .and willing to pay, and has tendered plaintiffs for the months for which she has been sued. The vital'question is whether defendant has established the verbal lease that she alleges.
Plaintiffs are the owners of a brick building in the city of Shreveport, and defendant conducts a business college in a part of the building. When she conceived the idea of opening the college,' she made application to plaintiffs for a leaseand a written contract uvas executed by 'which plaintiffs leased to her four rooms in the building at a monthly rental of $63.35 for one year, beginning May 1, 191S. The lease was renewed for six months by written act. The renewal expired October 31, 1919. In the renewal there was included an additional room at $15 a month rental, thus making the rental, in so far as the written contract is concerned, $78.35 a month. Defendant’s business college flourished. She required more room. She therefore rented verbally from plaintiffs, from month to month, an additional room, for which she paid $22.50 a month, making a total monthly rental of $100.85.
On July 1, 1919, shortly before the expiration of defendant’s written lease, she received a letter from the plaintiffs notifying her that, due to the increased cost of operating the building, the monthly rental of the rooms she occupied, beginning August 1st, would be $22.50 each. However, this letter was erroneous and misleading in part, for, as explained by plaintiffs, in a letter sent by them to defendant on October 18th the above letter was intended to apply only to the one room which she was renting from month to month, and not to the remaining rooms which she had under lease to October 31st. On July 8th, following the receipt of the letter advising defendant of the increase in rent, she called at plaintiff’s office, according to her version, for the purpose of renewing the lease. On the occasion of that visit she testifies that. S. J. Ward, one of- the plaintiffs, wrote some figures on an envelope, showing what the rental per month would be for a two-year lease, and agreed verbally- to lease the six rooms to her for that period at those figures, which amounted to $135. a month. Defendant testifies that she asked for a written lease but. that War'd told her that “his word was as good ■ as his bond,” still, if shé wanted one,- he would execute it at the termination of the lease then in force. *1051 Ward emphatically denies that any such conversation took place and denies most positively that he entered into the verbal lease testified to by defendant. Ward’s associates and co-owners' of. the building, M. and R. II. Ward, testify that he was not authorized-to enter into such a contract; that such contracts were entered into only after consultation among the three co-owners; and that the matter had not been brought to their attention. On the other hand, Nesbitt, who was engaged in the oil business, and who desired the offices occupied by defendant, testifies that S. I. Ward in September, before the expiration of the lease then in force, suggested that he go to defendant and give her a bonus for her lease, that he went to see her for that purpose, but that defendant would not consider the matter, and hence that no amount was offered her as a bonus. Ward testifies that when he sent Nesbitt he had in mind the unexpired portion of the lease, expiring on October 31, 1919, the existence of which has never been in dispute. Nesbitt testifies that, while' no data was given him, yet Ward left him under the impression that defendant had a lease for a long term.
On October 16, 1919, plaintiffs notified defendant by letter that, beginning November 1st, the rent would be $165 a month. To this defendant replied that she had leased the property verbally for $135 a month for two years, and that the proposed increase conflicted with . that contract. At the expiration of the month of November, defendant sent plaintiffs her check for $135, as rent for that month. Plaintiffs immediately returned it, and defendant again sent it to plaintiffs, who again returned it. Notice was then given to defendant to vacate; and, as she refused to do so, this suit followed.
In the lower court the evidence was taken before one judge, and, due to his resignation, was decided by another judge on the evidence taken. The judgment in the court below was for plaintiffs, and defendant has appealed.
The statement of the evidence given above is an outline of its principal features. The circumstances relied upon by defendant, as well as those against her position, have been carefully weighed and considered. It is true that defendant’s occupation was such as to have made it a matter of importance that she secure quarters of at least some permanency. She seems to have been impressed with that fact. At the time she entered the building as a tenant she ha¿ no trouble, apparently, in securing a written lease. Before it expired, she had no trouble in securing a written extension. The plaintiffs were perfectly willing to reduce both to writing, and defendant saw the importance of so doing. Notwithstanding her foresight on other occasions and the willingness of plaintiffs at those times to reduce the contract to writing, yet on this occasion, when the importance of a written contract was all the greater, she, as observed by tire judge a quo, contented herself with a mere verbal agreement and promise that, at the expiration of the lease she was then holding under, the contract would be reduced to writing, if she so desired. This was contrary to the course of business between the parties.
[2] When this is considered in connection with the positive evidence of S. J. Ward, supported by the evidence of his two brothers and co-owners, relative to the manner in which such leases were granted, and the authority of S. J. Ward in the matter, and their lack of knowledge at the time of such an agreement, it leads to the conclusion that the evidence of defendant, though positive and given, in detail, has been outweighed. In reaching this conclusion, the evidence of Nesbitt has been considered. The fact that S. J.. Ward sent him to defendant to offer her a bonus is explained very largely, by the *1053 further fact tliat the old lease still had some six or seven weeks to run, and delivery could not be made till the expiration of that lease. It is true that Nesbitt was under the impression that the lease was a long one, but this was a mere impression, for he himself states that he did not know its term.
[3] Defendant contends, should we find that she has failed to establish her contract, that plaintiffs cannot recover for the two-months’ rent, at $165 a month, for the reason that they sue on a contract, and the evidence fails to show an agreement on her part to pay that amount.
The petition, however, does not declare that defendant agreed to pay that sum. It declares that “the monthly rental and charge for said offices and rooms, is $105 per month, said price having (been) fixed to begin on the 1st day of November, 1919, of which the said Miss Nell B. Lynn had notice” (italics ours), and then follows the allegation as to the failure and refusal to pay.
The 'evidence establishes the facts as alleged, and shows that at the time the rooms were worth the rental sued for.
For the reasons assigned, the judgment appealed from is affirmed at defendant’s costs.